BRIAN M. GROSSMAN (SBN 166681)
MARCANNE L. HYJEK (SBN 329113)
TESSER | GROSSMAN LLP
11990 San Vicente Blvd., Suite 300
Los Angeles, California 90049
Telephone: (310) 207-4558
E-mail: brian@tessergrossman.com
              marcanne@tessergrossman.com

Attorneys for Plaintiff
JAMES H. LUNDBERG

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES H. LUNDBERG, an individual dba CS ATHLETIC,<br><br>Plaintiff,<br><br>v.<br><br>CSTOWN CULTURAL AND CREATIVE (DALIAN) CO., LTD., a China corporation; CSTOWN USA INC., a Nevada corporation; and TU TU USA INC, a California corporation, and DOES 1 through 10 inclusive,<br><br>Defendants. | Case No.: **'26CV0408 LL   DEB**<br><br>**COMPLAINT**<br><br>**(1) FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(a);**<br>**(2) UNFAIR COMPETITION, CAL. BUS. & PROF. CODE, § 17200 et seq.;**<br>**(3) COMMON LAW UNFAIR COMPETITION; and**<br>**(4) COMMON LAW TRADEMARK INFRINGEMENT** |

Plaintiff James H. Lundberg, doing business as CS Athletic, ("Mr. Lundberg," "CSA," or "Plaintiff") hereby submits his Complaint against Defendants CSTown Cultural and Creative (Dalian) Co., Ltd. ("CST-China"); CSTown USA Inc. (hereinafter, "CST-USA"); and Tu Tu USA Inc ("TTU") (collectively, "Defendants" or "CST"), and alleges as follows:

///

///

**COMPLAINT**

# PARTIES

1. Plaintiff Mr. Lundberg is a United States citizen and a domiciliary of the Philippines. Mr. Lundberg conducts business as CS Athletic.

2. Upon information and belief, defendant CST-China is a corporation organized and existing under the laws of the Peoples Republic of China.

3. Upon information and belief, defendant CST-USA is a corporation organized and existing under the laws of the State of Nevada and having a principle place of business at 6164 Artisan Way, San Diego, California 92130.

4. Upon information and belief, defendant TTU is a corporation organized and existing under the laws of the State of California and has a principle place of business at 3333 S. Brea Canyon Rd, Suite 214, Diamond Bar, California 91765.

# JURISDICTION AND VENUE

5. This action arises under the federal trademark statute (the "Lanham Act"), 15 U.S.C. § 1051, et seq., and under the laws of the State of California. This Court has subject matter jurisdiction over the federal Lanham Act claim for false designation of origin pursuant to 15 U.S.C. §§ 1121, 1225 and 28 U.S.C. §§ 1331 and 1338. The Court has subject matter jurisdiction over the related California state law claims pursuant to 28 U.S.C. §§ 1338 and 1367.

6. This Court has general personal jurisdiction over defendant CST-USA because, upon information and belief, CST-USA maintains its principle place of business in California; specifically in this Judicial District. CST-USA is, therefore, "at home" in the State of California.

7. This Court has general personal jurisdiction over defendant TTU because TTU is incorporated in California and further because, upon information and belief, TTU maintains its principle place of business in California; specifically in this Judicial District. TTU is, therefore, "at home" in the State of California.

///

///

8. This Court has specific personal jurisdiction over each defendant because each defendant conducts business in and has extensive contacts with the State of California and this Judicial District. Upon information and belief, each defendant has also caused products that infringe CS Athletic's rights in CS Athletic's CS ATHLETIC trademark (hereinafter, "CSA's Mark") to be sold and shipped to residents of California, including residents within this Judicial District.

9. Upon information and belief, each defendant has also advertised and promoted its products, which Defendants market under the infringing mark CSTOWN, to residents of California, including residents within this Judicial District.

10. Accordingly, each defendant purposefully avails itself of the privilege of doing business in California.

11. The causes of action asserted in this Complaint arise out of each defendant's respective contacts with California and with this Judicial District.

12. Each defendant has caused tortious injury to CSA in this Judicial District.

13. The exercise of specific personal jurisdiction over each defendant in this action, CST-China, CST-USA, and TTU, does not violate constitutional due process and does not otherwise run afoul of the Constitution and other laws of the United States.

14. CST-China is not subject to general personal jurisdiction in any state within the United States. As indicated above, the exercise of personal jurisdiction over CST-China by this Court is consistent with the Constitution and laws of the United States given CST-China's extensive contacts with the State of California and with this Judicial District. Therefore, to the extent that no other basis for personal jurisdiction exists with respect to defendant CST-China, the exercise of personal jurisdiction is proper under Federal Rule of Civil Procedure 4(k)(2) upon service of process upon defendant CST-China or upon the filing of a waiver by CST-China of formal service of process.

15.     Venue is proper in this Judicial District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to CSA's claims occurred in this Judicial District, and because each defendant has caused tortious injury to CSA in this Judicial District. In the alternative, were venue to be found lacking under U.S.C. § 1391(b)(3), venue is proper in this Judicial District under 28 U.S.C. § 1391(b)(3).

## FACTUAL BACKGROUND

### A.     CSA's Exclusive Rights To The Distinctive CS ATHLETIC Mark

16.     Mr. Lundberg is a serial entrepreneur who has, over the course of his career, built several multi-million dollar businesses. Mr. Lundberg has been featured for his entrepreneurial and business achievements, and for his innovative products, in the New York Times and other widely-distributed publications.

17.     Mr. Lundberg founded his business in 1997. He initially sold to NBA teams as well as other professional leagues, CheerStix balloons, which are noise-generating audience engagement products that can be used to promote specific teams and other organizations. He started selling to high school cheer squads in 1998. In 2001, Mr. Lundberg started a unique line of dye sublimated team merchandise that was specifically directed to cheer teams to use for fundraising. In 2009, Mr. Lundberg came out with the first line of dye sublimated cheer apparel in the industry and subsequently rebranded as CS Athletic in early 2010.

18.     Since founding CSA, CSA has established itself as a leader in the market for cheerleading uniforms, and athletic apparel, including but not limited to, shirts, shorts, footwear, hair bows, and bags, (collectively, "CSA's Goods").

19.     CSA has been using CSA's Mark in interstate commerce in the United States for purposes of marketing and selling CSA's Goods since 2010. Specifically, CSA has marketed, offered for sale, sold, and shipped CSA's Goods under CSA's Mark (i.e., with CSA's Mark variously appearing on CSA's Goods, on the associated

///

product packaging, and in point-of-sale advertising) to U.S. residents, including residents of California and residents of this Judicial District, since at least as early as March, 2010.

20.  Over the course of this decade and a half of use in commerce by CSA, CSA has steadily built tremendous marketplace goodwill and a pristine brand that carries with it the most esteemed business reputation.

21.  CSA's use in commerce of CSA's Mark in the United States has been continuous and exclusive from March, 2010 to the present.

22.  CSA uses the CSA's Mark in commerce in connection with CSA's Goods throughout the entire United States, and has done so since March, 2010. CSA's use of CSA's Mark has at all times constituted bona fide use of the Mark in the ordinary course of trade.

23.  CSA's use of CSA's Mark in interstate commerce in the United States in connection with CSA's Goods has included, without limitation, marketing, offering for sale, selling, and shipping CSA's Goods under CSA's Mark to residents throughout the entire United States.

24.  In addition to conventional advertising and marketing, CSA markets and promotes CSA's Goods through its website (https://cs-athletic.com/), its Instagram account (https://www.instagram.com/csathletic/?hl=en), and its Facebook account (https://www.facebook.com/csathletic/). All of these sites are accessible to the general public, including California residents and residents of this Judicial District.

25.  As part of CSA's overall brand protection strategy, on June 23, 2025, CSA filed U.S. Trademark Application Serial Number 99247383 (the "'383 application") for the standard character trademark CS ATHLETIC. The '383 application identifies "[a]thletic uniforms; athletic uniforms, namely, cheerleading uniforms; athletic apparel; athletic apparel, namely, shirts, shorts, footwear, hair bows, and bags," in International Class 25. That application is currently under examination by the U.S. Patent and Trademark Office ("USPTO").

26. CSA's Mark is inherently distinctive when used in connection with CSA's Goods. Specifically, CSA's Mark is fanciful or arbitrary when used in connection with CSA's Goods and, therefore, is entitled to a high degree of protection.

27. Additionally, as a result of CSA's extensive use and advertising of the CSA Mark, and the substantial consumer recognition of the CSA Mark, the trade and consuming public have come to recognize and associate CSA's Mark with CSA as the source or origin of CSA's Goods, and an indicator of high-quality products offered by CSA.

28. Consequently, CSA has amassed a high degree of goodwill among consumers and prospective consumers of CSA's Goods. The CSA Mark has become a valuable symbol of CSA's goodwill.

**B.  CST's Unauthorized Use Of The Confusingly Similar CSTOWN Mark**

29. CST-China, CST-USA, and TTU use the mark CSTOWN, in both standard character format and in the stylized format shown below (hereinafter, collectively, the "Infringing Marks"), in interstate commerce in connection with cheerleading uniforms, and athletic apparel, including but not limited to, shirts, shorts, footwear, hair bows, bags, and cheerleading pompoms, (collectively, the "Infringing Goods"):



///
///
///
///
///
///

5
**COMPLAINT**

30. CST-China, CST-USA, and TTU market the Infringing Goods through CST's website. An image from CST's website showing use of the stylized CSTOWN mark is shown below.



31. On February 6, 2012, CST-USA filed U.S. federal trademark application serial number 85534947 for standard character trademark CSTOWN. In that application, CST-USA identified "Decals; Stickers and transfers; iron-on transfers" in International Class 16, and "dresses" in International Class 25. The application was allowed and the CSTOWN Mark was registered on September 11, 2012 (Reg. No. 4205663). CST-USA subsequently cancelled Class 25 from the registration. With regard to "Decals; Stickers and transfers; iron-on transfers" in International Class 16, CST-USA has asserted to the USPTO a first use in commerce date of March, 2011.

32. On February 6, 2012, CST-USA filed U.S. federal trademark application serial number 85534979 for the following mark:

33. In that application, CST-USA identified "Decals; Stickers and transfers; iron-on transfers" in International Class 16, and "dresses" in International Class 25. The application was allowed and the CSTOWN Mark was registered on September 11, 2012 (Reg. No. 4205666). The registration was subsequently cancelled due to failure to submit acceptable specimens of use.

///

**6**
**COMPLAINT**

34. On March 5, 2025, CST-China filed Application Serial No. 79419990 (the "'990 application") directed to the following mark:

**CSTOWN**

35. In that application, CST-China designated International Class 25, for "Dresses; skirts; coats; petticoats; bodices; corselets; fingerless gloves as clothing; masquerade costumes; gym suits; collars being clothing." The '990 application was filed pursuant to Lanham Act § 66(a) based on International Registration No. 1846095. CST-China designated the United States on or around March 27, 2025. This application remains pending. The associated base application was filed in China in 2013.

36. On October 5, 2025 CSA sent defendant CST-China a letter notifying it of its infringement of CSA's trademark rights. CSA's letter demanded that CST-China cease use of the Infringing Marks.

37. On October 30, 2025, defendant TTU filed Application Serial No. 99471498 (the "'498 application") directed to the standard character mark CSTOWN. The '498 application identifies, among other goods, "[a]pparel for dancers, namely, tee shirts, sweatshirts, pants, leggings, shorts and jackets; Dance costumes; T-shirts; Pajama bottoms; Pajamas; Long jackets; Sport shirts; Warm up outfits; Shoes; School uniforms; Gym suits," in International Class 25, and "[c]heerleading pompoms," in International Class 28. That application is currently pending.

38. On October 31, 2025, CST-China responded to CSA's letter. CST-China denied infringement. To date, CST has not complied with CSA's cease-and-desist demand. Rather, CST continues to use the Infringing Marks.

39. Notwithstanding that CST-China, CST-USA, and TTU have actual notice of CSA's prior and superior rights in CSA's Mark, CST-China, CST-USA, and TTU continue to use the Infringing Marks in violation of CSA's trademark rights.

40. CSA has become aware of numerous instances of actual consumer confusion caused by CST-China's, CST-USA's, and TTU's deceptive use of the Infringing Marks.

41. As a result of CST-China's, CST-USA's, and TTU's infringement, CSA has suffered and will continue to suffer financial injury, as well as irreparable harm to CSA's business reputation and marketplace goodwill.

## FIRST CAUSE OF ACTION

**Federal Unfair Competition and False Designation of Origin Under 15 U.S.C. § 1125(a)**

42. CSA re-alleges and incorporates herein by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

43. CSA has priority in CSA's Mark over CST's Infringing Marks.

44. CSA possesses valid and subsisting, exclusive common law trademark rights in CSA's Mark in California, and elsewhere throughout the United States.

45. The Infringing Marks overlap with CSA's Mark, in that both the Infringing Marks and CSA's Mark contain the dominant "CS" at the beginning.

46. CST-China's, CST-USA's, and TTU's Infringing Goods are identical, closely related to, overlap with, and/or are of the type that come from the same source as CSA's Goods.

47. CST-China, CST-USA, and TTU have used and continue to use the Infringing Marks to promote their Infringing Goods.

48. CST-China's, CST-USA's, and TTU's unauthorized use of the Infringing Marks in connection with the Infringing Goods is likely to cause confusion, mistake, or deception as to an affiliation, connection, or association of each of CST-China, CST-USA, and TTU with CSA, and/or as to the origin, sponsorship, or approval of the Infringing Goods and CST-China's, CST-USA's, and TTU's commercial activities by CSA.

49. The actions of CST-China, CST-USA, and TTU described above and specifically, without limitation, its unauthorized use of the Infringing Marks in commerce to advertise, promote, market, and provide the Infringing Goods throughout the United States, including in California, constitutes unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a).

50. As an actual and proximate result of CST-China's, CST-USA's, and TTU's willful and intentional actions, CSA has suffered damages in an amount to be determined at trial, and unless CST-China, CST-USA, and TTU are enjoined, CSA will continue to suffer irreparable harm and damage to its business, reputation, and goodwill.

51. Pursuant to 15 U.S.C. § 1117, CSA is entitled to actual damages sufficient to compensate CSA for CST-China's, CST-USA's, and TTU's Lanham Act violations.

52. Pursuant to 15 U.S.C. § 1117, CSA is entitled to an accounting of profits made by CST-China, CST-USA, and TTU on the sales of products sold under the Infringing Marks.

53. Furthermore, CSA is informed and believes, and on that basis alleges, that CST-China's, CST-USA's, and TTU's conduct was undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exceptional case entitling CSA to recover additional damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION
**Unfair Competition, Cal. Bus. & Prof. Code, § 17200 *et seq*.**

54. CSA re-alleges and incorporates herein by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

///

///

55. Any unlawful, unfair, or fraudulent business practice or act constitutes a violation of the California Unfair Competition Law, Business and Professions Code § 17200 et seq.

56. CST-China's, CST-USA's, and TTU's unlawful, unfair, and improper acts discussed above are likely to cause confusion, mistake, or deception as to an affiliation, connection, or association of each of CST-China, CST-USA, and TTU with CSA, and/or as to the origin, sponsorship, or approval of the Infringing Goods and CST-China's, CST-USA's, and TTU's commercial activities by CSA.

57. Accordingly, CST-China's, CST-USA's, and TTU's unauthorized and unlawful use of the Infringing Marks in connection with the Infringing Goods constitutes unfair competition in violation of California Business and Professions Code § 17200.

58. CST-China's, CST-USA's, and TTU's acts of unfair competition have caused CSA to sustain monetary damage, loss, and injury, in an amount to be determined at trial.

59. CST-China's, CST-USA's, and TTU's acts of unfair competition have further caused CSA to sustain, and if left unabated will continue to cause CSA to sustain, irreparable harm to CSA's marketplace goodwill and business reputation.

60. In light of the foregoing, CSA is entitled to an injunction under California Business and Professions Code § 17200 restraining CST-China, CST-USA, and TTU' from further engaging in such unlawful conduct, as well as to restitution of those amounts unlawfully obtained by CST-China, CST-USA, and TTU through their wrongful and unlawful conduct.

## THIRD CAUSE OF ACTION

### Common Law Unfair Competition

61. CSA re-alleges and incorporates herein by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

62. By using the Infringing Marks and manufacturing, advertising, marketing, promoting, distributing, displaying, offering for sale, selling, and otherwise dealing in the Infringing Goods, CST-China, CST-USA, and TTU have traded off the extensive goodwill of CSA and CSA's Mark to induce, and did induce and intends and will continue to induce, customers to purchase its Infringing Goods, thereby directly competing with CSA and engaging in unfair competition in violation of the common law of the State of California. Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of CSA, which CSA has amassed through its nationwide marketing, advertising, sales, and consumer recognition.

63. CST-China's, CST-USA's, and TTU's use of the Infringing Marks and their advertising, marketing, promotion, distribution, display, offering for sale, sale, and otherwise dealing in the Infringing Goods was and is in violation and derogation of CSA's rights and is likely to cause confusion and mistake, and to deceive consumers and the public as to the source, origin, sponsorship, or quality of Defendants' Infringing Goods and/or Defendants' business(es).

64. CST-China, CST-USA, and TTU knew, or by the exercise of reasonable care should have known, that their use of the Infringing Marks, and their advertising, marketing, promotion, distribution, display, offering for sale, sale, and otherwise dealing in the Infringing Goods, and their continued use of the Infringing Marks, and their continued advertising, marketing, promotion, distribution, display, offering for sale, sale and otherwise dealing in the Infringing Goods, would cause confusion and mistake, or deceive purchasers, users, and the public.

65. Upon information and belief, CST-China's, CST-USA's, and TTU's aforementioned wrongful and unlawful actions have been knowing, deliberate, willful, intended to cause confusion and mistake, and to deceive, in blatant disregard

///

///

of CSA's rights, and for the wrongful purpose of injuring CSA and its competitive position while benefiting Defendants. CST-China, CST-USA, and TTU have undertaken the acts complained of herein with malice, oppression, and fraud.

66. As a direct and proximate result of CST-China's, CST-USA's, and TTU's aforementioned wrongful and unlawful actions, CSA has been and will continue to be deprived of substantial sales of CSA's Goods, and of the value of CSA's Mark as a commercial asset, in an amount as yet unknown but to be determined at trial. Such injury is not fully and adequately compensable through monetary relief.

67. As a result of Defendants' actions alleged herein, CSA is entitled to injunctive relief, an order granting CSA actual damages and CST-China's, CST-USA's, and TTU's profits generated through their infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.

## FOURTH CAUSE OF ACTION

### Common Law Trademark Infringement

68. CSA re-alleges and incorporates herein by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

69. CSA possesses valid and subsisting, exclusive common law trademark rights in CSA's Mark in California, and elsewhere throughout the United States.

70. CST-China's, CST-USA's, and TTU's unauthorized use of the Infringing Marks in connection with the Infringing Goods is likely to cause confusion, mistake, or deception as to an affiliation, connection, or association of each of CST-China, CST-USA, and TTU with CSA, and/or as to the origin, sponsorship, or approval of the Infringing Goods and each of CST-China's, CST-USA's, and TTU's commercial activities by CSA.

71. CST-China's, CST-USA's, and TTU's use of the CSA's Mark constitutes an unlawful use in interstate commerce.

72. CST-China, CST-USA, and TTU have acted knowingly, intentionally, wantonly, willfully, maliciously, and without regard for the impact that would have on CSA.

73. CST-China's, CST-USA's, and TTU's actions have caused and will continue to cause irreparable injury to CSA.

74. CST-China's, CST-USA's, and TTU's misconduct constitutes trademark infringement in violation of the common law of the State of California and has caused substantial, irreparable injury to CSA for which there is no adequate remedy at law.

75. As a result of Defendants' actions alleged herein, CSA is entitled to injunctive relief, an order granting CSA actual damages caused by CST-China's, CST-USA's, and TTU's infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.

**PRAYER FOR RELIEF**

**WHEREFORE**, CSA prays that this Court enter judgment against CST as follows:

1. That each of CST-China, CST-USA, and TTU, and all of their respective officers, agents, representatives, employees, attorneys, and all other persons acting in concert with them be permanently enjoined and restrained from:

    a. Using the Infringing Marks, or any other mark confusingly similar to the Infringing Marks, in connection with the production, importation, shipping, distribution, marketing, promotion, advertising, offering for sale, or sale of any goods or services, including but not limited to the Infringing Goods or other athletic clothing and/or apparel, including online and on social media.

    b. Applying for, seeking to register, registering, renewing, or maintaining any trademark, trade name, service mark, company name,

or domain name consisting, in whole or in part, of the mark CSTOWN, with any governmental agency, office, or other authority, anywhere in the world; and

  c. Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs (1) and (2);

2. That each of CST-China, CST-USA, and TTU be adjudged to have violated 15 U.S.C. § 1125(a) (Count I) by infringing CSA's rights in CSA's Mark, and by unfairly competing against CSA, by using a false designation of origin, as CST-China's, CST-USA's, and TTU's unauthorized use of the Infringing Marks in connection with the Infringing Goods is likely to cause confusion, mistake, or deception as to an affiliation, connection, or association of each of CST-China, CST-USA, and TTU with CSA, and/or as to the origin, sponsorship, or approval of the Infringing Goods and each of CST-China's, CST-USA's, and TTU's commercial activities, by CSA;

3. That CSA be awarded damages pursuant to 15 U.S.C. § 1117(a), sufficient to compensate it for the damages caused by CST-China's, CST-USA's, and TTU's acts of false designation of origin and unfair competition;

4. That CSA be awarded CST-China's, CST-USA's, and TTU's profits derived by reason of said acts, as determined by an accounting;

5. That such damages and profits referenced above be trebled and awarded to CSA;

6. Declaring this case exceptional and awarding CSA their costs, attorneys' fees, and expenses incurred in connection with this suit under 15 U.S.C. § 1117, as a result of CST-China's, CST-USA's, and TTU's willful, intentional, deliberate acts in violation of the Lanham Act;

7. That CST-China, CST-USA, and TTU be adjudged to have violated Cal. Bus. & Prof. Code, § 17200 et seq. (Count II);

8. That CSA be awarded restitution in the form of CST-China's, CST-USA's, and TTU's profits derived by reason of their infringing acts complained of herein, as determined by an accounting, under California Business and Professions Code § 17200;

9. That each of CST-China, CST-USA, and TTU be adjudged to have engaged in unfair competition under California common law (Count III), and to have violated CSA's trademark rights under California common law (Count IV);

10. That CSA be awarded damages in an amount sufficient to compensate it for the damage caused by CST-China's, CST-USA's, and TTU's unfair competition and trademark infringement under California common law;

11. That CSA be awarded punitive damages pursuant to California common law based on CST-China's, CST-USA's, and TTU's reckless disregard of CSA's rights;

12. That CST-China, CST-USA, and TTU and any principals, agents, employees, successors, and assigns of and all those in privity or concert with each such entity who receive actual notice of said order, deliver up for destruction all Infringing Goods and all promotional, advertising and any other printed materials and items of any kind bearing the Infringing Marks or any other name or mark that is confusingly similar to the Infringing Marks;

13. That each of CST-China, CST-USA, and TTU file, within ten (10) days from entry of an injunction, a declaration with this Court signed under penalty of perjury certifying the manner in which CST-China, CST-USA, and TTU have complied with the terms of the injunction;

14. That CSA be granted prejudgment and post judgment interest on any monetary relief that the Court sees fit to award CSA in this action;

15. That CSA be granted costs associated with the prosecution of this action; and

///

1    16.    That CSA be granted such further relief as the Court may deem just.

Dated: January 22, 2026                    Respectfully submitted,

                                           TESSER | GROSSMAN LLP
                                           BRIAN M. GROSSMAN
                                           MARCANNE L. HYJEK

                                           By: s/Brian M. Grossman
                                               BRIAN M. GROSSMAN

                                           By: s/Marcanne L. Hyjek
                                               MARCANNE L. HYJEK

                                           Attorneys for Plaintiff
                                           JAMES H. LUNDBERG
                                           E-mail: brian@tessergrossman.com
                                                   marcanne@tessergrossman.com

## DEMAND FOR JURY TRIAL

WHEREFORE, CSA hereby demands a trial by jury in this action on all causes of action so triable.

Dated: January 22, 2026                    Respectfully submitted,

                                           TESSER | GROSSMAN LLP
                                           BRIAN M. GROSSMAN
                                           MARCANNE L. HYJEK

                                           By: s/Brian M. Grossman
                                               BRIAN M. GROSSMAN

                                           By: s/Marcanne L. Hyjek
                                               MARCANNE L. HYJEK

                                           Attorneys for Plaintiff
                                           JAMES H. LUNDBERG
                                           E-mail: brian@tessergrossman.com
                                                   marcanne@tessergrossman.com